GEORGE E. BURNS, Administrator, *vs.* NEW YORK, PROVI-
DENCE AND BOSTON RAILROAD COMPANY.

PROVIDENCE—MAY 7, 1892.

In the absence of testimony that it is customary for railroad companies (or that prudent men engaged in operating railroad trains have ever considered it essential) to remove the spindles from the draw-bars for the purpose of inspecting them:—

*Held,* that it was not negligence to omit an inspection of the spindle in that manner.

HEARD ON DEFENDANT'S petition for a new trial.

PER CURIAM.    In this case the testimony does not show whether the deceased was thrown from train by the breaking of the spindle, or whether he fell from the train and the sudden strain upon the spindle, occasioned by the passing of the wheels of the train over his body, caused the breaking of the spindle.

But assuming that it was the breaking of the spindle which caused the deceased to fall from the train and which occasioned his death, the testimony fails to show negligence on the part of the defendant.    It is claimed that the defendant was negligent, in that it did not inspect the spindle at stated times by removing it from the draw-bar.    The testimony of the defendant shows that its freight cars are regularly inspected at each end of the route, Providence and Worcester, and that in such inspection the "draw-bars and draw-rigging" are examined, and that such inspection, so far as it relates to the spindle, is made by the inspector getting under the car and examining such portion of the spindle as is in sight, to wit, the end which projects beyond the draw-bar.    It is contended on the part of the plaintiff that this inspection was insufficient, because the spindle was not removed from the draw-bar, and that the defect which caused it to break was within the draw-bar so that it could not be discovered without removing it from the draw-bar.    On the other hand it was contended by the defendant that the only inspection that is or ever has been deemed necessary by railroad men is the inspection made by its employees, since the weakest portion

of the spindle is at the slot through which the key is inserted
to hold it in its position, and that this portion of the spindle
can be and is inspected in the manner stated, without remov-
ing it from the draw-head; that the breaking of the spindle
in question, within the draw-bar, was very unusual, if not
unprecedented, and was due to a flaw in the iron which could
not have been discovered without breaking the spindle had it
been removed from the draw-head.    The plaintiff in reply
contended that the spindle, instead of having a flaw in it,
was cracked, and that the surface of the iron where it was
broken was rusted for a considerable distance across the
break, and that if the spindle had been removed from the
draw-head the crack could have been easily perceived.    No
one saw the spindle until after it had been broken.    We are
inclined to believe that the contention of the defendant is
correct, and that the discoloration spoken of by the plaintiff's
witness as rust was simply the discoloration characteristic of
a flaw in iron due to imperfect cohesion.    But, however this
may be, we do not think the fact material.    No testimony
was adduced by the plaintiff to show that it is customary for
railroad companies, or that it has ever been considered essen-
tial by prudent men engaged in the operation of railroad
trains to remove spindles from the draw-bars for the purpose
of inspecting them, and in the absence of such testimony, we
are of the opinion that it was not negligence for the de-
fendant to omit an inspection of the spindle in question in
that manner.

   Defendants' petition for a new trial granted.

   *George T. Brown*, for plaintiff.

   *Walter B. Vincent*, for defendant.